UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERT H. SUNDERMEIR, | : | |
|    *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:16cv18 (MPS) |
| | : | |
| CHAPDELAINE, *et al.* | : | |
|    *Defendants.* | : | August 10, 2017 |

**RULINGS ON MOTION TO AMEND COMPLAINT, MOTION FOR EXTENSION OF TIME AND MOTION TO COMPEL DISCOVERY**

The plaintiff, Robert H. Sundermeir, has filed a fourth motion to amend his complaint [Doc.#22] and a second amended complaint [Doc.#26] against Nursing Supervisor Heidi Green, Dr. S. Naqvi, and Dr. Jonny Wu. He has also filed a motion for extension of time to submit discovery [Doc.#25] and a motion to compel the defendants to comply with his discovery requests [Doc.#27]. For the following reasons, the Court will GRANT the plaintiff's motion and dismiss the second amended complaint in part. The Court will GRANT the plaintiff's motion for extension of time but DENY without prejudice his motion to compel discovery subject to refiling at a later stage of litigation.

I. <u>Background</u>

On January 6, 2016, the plaintiff, Robert H. Sundermeir, an inmate incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall-Walker") in Suffield, Connecticut, filed a complaint *pro se* against Warden Carol Chapdelaine, Dr. S. Naqvi, Dr. Jonny Wu, Nursing Supervisor Heidi Green, and Associate Director of Patient Care Mary Ellen Castro. As stated in its Initial Review Order, the plaintiff alleged the following facts:

[O]n August 28, 2015, at his sentencing hearing in state court, [the plaintiff] injured his left hip and ankle. Upon his return to MacDougall-Walker, officers transported him in a wheelchair to the medical department to be examined.

On August 31, 2015, Dr. Naqvi referred him for x-rays of his left ankle and hip and provided him with crutches. On September 3, 2015, the plaintiff began taking pain medication. On September 4, 2015, a nurse sent the plaintiff to the hospital because she could not detect a pulse in his ankle. The plaintiff contends that the nurse mistakenly checked for a pulse on the wrong side of his ankle. An ultrasound revealed no blood-clot in his left leg or ankle.

On September 9, 2015, Dr. Naqvi prescribed a muscle relaxant and referred the plaintiff for a CT scan and a consultation with an orthopedist. Dr. Naqvi did not issue the plaintiff a pass to shower in the handicapped shower room or wrap the plaintiff's ankle. The plaintiff washed himself using water from the sink in his cell.

On September 22, 2015, Dr. Naqvi prescribed a stronger pain medication to be taken in the evening. On September 26, 2015, Dr. Naqvi prescribed pain medication to be taken during the day. On October 7, 2015, Dr. Naqvi informed the plaintiff that the requests for a consultation had been approved. He also prescribed a stronger pain medication to be taken by the plaintiff during the day.

On November 4, 2015, a vascular surgeon examined the plaintiff. On November 5, 2015, the plaintiff underwent a CT scan which revealed two bulging discs, degenerated disc disease, and a pinched sciatic nerve.

On November 8, 2015, the plaintiff wrote to Captain Hall asking to be permitted to use the handicapped shower room. Captain Hall contacted Nurse Heidi Green regarding the plaintiff's medical status. On November 15, 2015, the plaintiff asked Dr. Naqvi why he still had not been examined by an orthopedist. He also requested a wheelchair and stronger pain medication.

On November 16, 2015, Dr. Naqvi prescribed a pain medication patch. The plaintiff developed an allergic reaction to the patch. The plaintiff's left ankle was still painful and swollen.

On November 25, 2015, the plaintiff was approved for a shower in the handicapped shower room and was moved to a handicapped cell.

The plaintiff filed a grievance about the failure of Dr. Naqvi to refer him to be seen by an orthopedist. On December 2, 2015, a follow-up visit with the vascular surgeon indicated there was no evidence of vascular problems.

> On December 3, 2015, Dr. Naqvi ordered a wheelchair for the plaintiff and referred the plaintiff for x-rays of his left foot. On December 20, 2015, Dr. Naqvi informed the plaintiff that the x-rays revealed no broken bones in his left foot. On December 24, 2015, after using crutches for seventeen weeks, medical staff approved the plaintiff to use a wheelchair. On December 30, 2015, the plaintiff wrote the medical department complaining of a loss of sensation in his left foot.

Initial Review Order [Doc.#14] at 2-4.

On March 9, 2016, the plaintiff moved to amend his complaint. Mot. to Amend Compl. [Doc.#9]. The Court granted his motion and directed him to file his amended complaint within twenty days of its order; *see* Order #12; but the plaintiff did not amend his complaint within that time frame. Consequently, the Court reviewed the plaintiff's allegations as stated in the original complaint.

On August 2, 2016, the Court dismissed the plaintiff's claims against all defendants except Dr. Naqvi. Initial Review Order [Doc.#14] at 6. The Court permitted the plaintiff's Eighth Amendment claim of deliberate indifference to medical needs to proceed against Dr. Naqvi in his individual capacity. *Id.*

Following the Initial Review Order, the plaintiff filed two more motions to amend his complaint [Doc.#s 16, 17]. In the second motion, the plaintiff sought leave to add a claim that Dr. Naqvi acted with deliberate indifference to his medical needs by denying him an increased supply of hormone medication to help transition him from male to female. The Court found no basis on which to grant the plaintiff leave to add this new claim and, therefore, denied his motion. Ruling on Mot. to Amend [Doc.#19] at 4-5. In the third motion to amend, the plaintiff made additional allegations against Dr. Wu and Nursing Supervisor Green regarding the lack of treatment for his ankle and back injuries. The Court denied the motion to amend without prejudice because the attached amended

complaint was deficient,[1] but permitted the plaintiff leave to file a new motion to amend and an amended complaint. Specifically, the Court ruled that the plaintiff may:

> file a new motion to amend and proposed amended complaint to assert claims against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green with regard to the treatment or lack of treatment of swelling and pain in the plaintiff's left ankle and foot and pain in his back. To the extent that the plaintiff seeks to elaborate on or add to his claim that Dr. Naqvi refused to schedule or arrange for him to undergo an examination or evaluation of his swollen and painful left ankle and knee by an orthopedist during the months of April through August 2016, he may include those allegations in the proposed amended complaint.

Ruling on Mot. to Amend [Doc.#19] at 8. The Court advised the plaintiff that his new amended complaint "should only include claims against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green with regard to treatment or lack of treatment for the pain and swelling in his left ankle and foot and pain in his pack during the months of September 2015 to September 2016" and any additional allegations regarding Dr. Naqvi's refusal to refer the plaintiff to an orthopedist during the months of April through August 2016. *Id.* at 9.

On December 15, 2016, the plaintiff filed his fourth motion to amend his complaint with an attached amended complaint and a request for monetary relief. Mot. to Amend Compl. [Doc.#22]. On June 20, 2017, the plaintiff filed a second amended complaint. Second Am. Compl. [Doc.#26]. That document appears to be a slightly better organized but otherwise identical version of the amended complaint attached to his fourth motion to amend. The plaintiff also filed a motion for extension of time to

---

[1] The Court ruled that the "Statement of Case" attached to the plaintiff's third motion to amend did not constitute an amended complaint because the caption did not (1) include the Court's name, (2) list all of the defendants in the title, and (3) include a designation indicating that it was an amended complaint as required by Federal Rules of Civil Procedure 7(a) and 10(a). Moreover, the "Statement" was not signed and did not include a request for relief as required by Federal Rules of Civil Procedure 8(a) and 11(a).

conduct discovery [Doc.#25] and a motion for an order compelling defendants Naqvi, Wu, and Greene to respond to his discovery requests [Doc.#27]. The Court will review the allegations in the second amended complaint [Doc.#26] for purposes of its ruling on the fourth motion to amend [Doc.#22].

II.     Relevant Legal Principles

Rule 15(a)(2) of the Federal Rules of Civil Procedure requires that a court's permission to amend a complaint "shall be freely given when justice so requires." "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). "This relaxed standard applies with particular force to *pro se* litigants. A *pro se* complaint is to be read liberally, and should not be dismissed without granting leave to amend at least once when such a reading gives *any* indication that a valid claim *might* be stated." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (emphasis in original; internal quotations omitted).

The decision whether to grant leave to amend a complaint is within the district court's sound discretion. *See Foman*, 371 U.S. at 182. "The rule in the Second Circuit has been to allow a party to amend its pleadings in the absence of prejudice or bad faith." *Independence Ins. Serv. Corp. v. Hartford Fin. Services Grp, Inc.*, 04 Civ. 1512 (JCH), 2005 WL 1038991, *4 (D. Conn. May 3, 2005) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). In determining what constitutes prejudice, the Court considers whether the amendment would (1) require the defendant to

5

expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent the plaintiff from bringing a timely action in another jurisdiction. *Id.* at *5 (citing *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993)).

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570.

III.   Analysis

   A. *Motion to Amend Complaint*

In its last ruling on November 21, 2016, the Court granted the plaintiff permission "to file a motion to amend accompanied by a properly captioned and signed proposed amended complaint that includes a request for relief." Ruling on Mot. to Amend [Doc.#19] at 9. The plaintiff complied with the Court's order regarding the proposed amended complaint. Unlike his previous amended complaint, his second amended complaint [Doc.#26] is properly captioned and signed, includes the names of all three defendants, and contains a request for relief. The defendants have not objected to the plaintiff's fourth motion to amend, and the record does not show any indication that the

amendment will result in unfair prejudice to the defendants. Thus, the Court will grant the plaintiff's fourth motion to amend his complaint [Doc.#22] and review the allegations contained within the second amended complaint.

  B. *Factual Allegations in Second Amended Complaint*

In addition to the allegations raised in the original complaint [Doc.#1], which are described above, the plaintiff alleges the following facts against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green regarding the treatment or lack of treatment for the pain and swelling in his left foot and back during the months of September 2015 to September 2016.

On January 17, 2016, Dr. Naqvi told the plaintiff that he did not like that his foot was still purple and, therefore, advised him to remain in the wheelchair and prescribed him Oxycodone for thirty days. Nine days later, the plaintiff noticed that the swelling in his left foot and ankle began to decrease. Nevertheless, the plaintiff requested that Dr. Naqvi raise his pain medication dosage from five milligrams to ten milligrams.

On February 3, 2016, the plaintiff saw Nursing Supervisor Green, who informed him that she was going to address his right elbow pain and verify his next appointment with Dr. Naqvi. On February 22, 2016, Nurse Kevin McCrystal took x-rays of the plaintiff's right elbow and raised his Oxycodone prescription dosage to ten milligrams.

On March 18, 2016, the plaintiff was sent to UConn Health Center for an orthopedist evaluation. The orthopedist took x-rays of the plaintiff's left foot and ankle and recommended an MRI to discover if the plaintiff had any torn tendons or ligaments. After the orthopedist evaluation, Nurse McCrystal lowered the plaintiff's pain medication back to five milligrams daily. The plaintiff later complained to a mental health worker

7

that he was experiencing pain in his left foot as a result of the decrease in dosage. The mental health worker provided him with stress-relieving and meditation techniques.

On May 11, 2016, the plaintiff was transported to UConn Health Center for his MRI scan. However, instead of conducting an MRI of his left foot, the clinical staff at UConn conducted a CT scan, which had already been done in November 2015.

On May 19, 2016, the plaintiff was taken off his pain medication. He saw Dr. Naqvi again on May 29 and asked him why an MRI[2] had not been done to see if he had any torn tendons or ligaments. Dr. Naqvi responded that the plaintiff could ask the clinical staff at UConn when he returns there in July.

On June 8, 2016, the plaintiff asked Nurse Niki about his next appointment with the orthopedist at UConn, but Nurse Niki told him that there was no such appointment scheduled. The plaintiff continued to complain to the staff at MacDougall-Walker about the pain he was experiencing, including Nursing Supervisor Green, but no one responded to his complaints.

On July 11, 2016, the plaintiff wrote a letter to Dr. Wu, explaining his medical history regarding his left foot and back. He informed Dr. Wu that a vascular surgeon at UConn had recently informed him that he had a decrease in blood flow above his left foot and that, if an orthopedist "does not work quick to correct [his] left foot [and] ankle, [he] will lose the use of his left foot [and] ankle[.]" He also informed Dr. Wu about the pinched sciatica and bulging disc in his back and asked him why he was not receiving

---

[2] The plaintiff actually alleges that he had asked Dr. Naqvi why a "CT-Scan w/ Dye" had not been conducted "to see if [he] had any torn tendons or ligaments." Second Am. Compl. at ¶ 90. Based on the context of this allegation, the Court concludes that the plaintiff meant to allege that he had inquired about why an MRI scan had not been conducted.

8

any pain medication. Nurse Mary Ellen Castro responded to the letter on August 12, informing the plaintiff that he was scheduled for another evaluation. That same day, the plaintiff was placed again on five milligrams of Oxycodone.

On July 20, 2016, Nurse McCrystal referred the plaintiff to Dr. Wu for pain medication and scheduled the plaintiff for an orthopedist visit. On August 4, the plaintiff was approved to go back to UConn but only for vascular evaluation, not for orthopedics.

On September 1, 2016, the plaintiff was called to see Dr. Naqvi, but he refused to go because he had filed this lawsuit against him and did not trust him.

On September 12, 2015, the plaintiff returned to UConn Health Center and was evaluated by the top vascular surgeon, who told him that he had Complex Regional Pain Syndrome ("RSD"). The surgeon recommended amputation of the plaintiff's left foot and a nerve test. The plaintiff went back to UConn on October 25, 2016 for his nerve test. After complaining about the pain in his foot and back, Nurse McCrystal increased his Oxycodone dosage to ten milligrams.

On December 7, 2016, Nurse McCrystal informed the plaintiff that, after his foot is amputated, the medical staff at MacDougall will address his lower back injury.

On February 14, 2017, the plaintiff was transported to Yale New Haven Hospital and seen by a vascular surgeon, who requested additional testing. Additional scanning revealed two nerve blockers in the plaintiff's left thigh and calf.

On April 28, 2017, the plaintiff's left foot was amputated. The very next day, the plaintiff felt no pain for the first time in twenty months. He was discharged from Yale two weeks later.

On June 13, 2017, the vascular surgeon at UConn informed the plaintiff that his UConn health insurance that paid for his operation would not pay for a prosthetic leg. The surgeon is currently reaching out to non-profit organizations to compensate for the prosthesis.

C. *Analysis of Claims in Second Amended Complaint*

To state a claim for deliberate indifference to a serious medical need, the plaintiff must show both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, 105 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, the defendants must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983; *see Salahuddin*, 467 F.3d at 280; nor does a difference of opinion regarding what constitutes an appropriate response and treatment. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Based on the Court's previous ruling on the third motion to amend and the factual

allegations in the second amended complaint, the plaintiff has stated plausible Eighth Amendment claims of deliberate indifference to medical needs against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green.

The Court previously permitted the plaintiff's Eighth Amendment claim to proceed against Dr. Naqvi based on the allegations that Dr. Naqvi (1) failed to ensure that the plaintiff would be evaluated by an orthopedist after informing him in September 2015 that such an evaluation would occur and (2) refused to explain why an orthopedist did not evaluate the plaintiff's injury. Although the plaintiff states in his second amended complaint that he eventually was seen by an orthopedist on March 18, 2016, the Court will permit his claim to proceed against Dr. Naqvi based on the alleged delay in treatment. *See Hathaway*, 37 F.3d at 67 (delay in treatment could support inference of deliberate indifference to medical needs).

As explained in the Court's ruling on the third motion to amend, the plaintiff alleged that he had informed Dr. Wu in a letter dated July 11, 2016 about the medical history of his left foot injury and the extremely painful conditions he was experiencing. Dr. Wu did not take any action regarding the plaintiff's complaint until August 12, 2016, when he approved the prescription of Oxycodone for the plaintiff's pain. Construed liberally, these allegations state a plausible claim of deliberate indifference to medical needs against Dr. Wu.

With respect to Nursing Supervisor Green, the plaintiff alleges that she never responded to the plaintiff's complaints in June 2016 regarding the pain he was experiencing in his foot. As explained in the Court's ruling on the third motion to amend, this allegation, construed liberally, plausibly states a claim of deliberate indifference to

11

medical needs against Nursing Supervisor Green. *See Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996) (prison superintendent's failure to respond to prisoner's complaint regarding missing prescription eyeglasses sufficiently stated claim for deliberate indifference to medical needs). Thus, the plaintiff's Eighth Amendment claim for deliberate indifference to medical needs will also proceed against Nursing Supervisor Green in her individual capacity.

In his second amended complaint, the plaintiff makes several allegations against the defendants regarding their refusal to provide adequate hormone medication to the plaintiff to facilitate his sex transition. Because the Court already advised the plaintiff in its previous order that his amended complaint "should only include claims against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green with regard to treatment or lack of treatment for the pain and swelling in his left ankle and foot and pain in his back during the months of September 2015 to September 2016;" Ruling on Mot. to Amend [Doc.#19] at 9; the allegations regarding his hormone medication will not be included in his Eighth Amendment claims against the defendants. If the plaintiff wishes to pursue an Eighth Amendment claim against the defendants regarding their treatment of his sex transition, he may do so in another case.

IV. Rulings on Motions for Extension of Time[Doc.#25] and Compelled Discovery [Doc.#27]

In addition to his motion to amend his complaint, the plaintiff has moved for an extension of time to submit discovery [Doc.#25] and for an order compelling the defendants to comply with his discovery requests, particularly his interrogatories [Doc.#27]. The plaintiff is reminded that he need not file discovery requests with the Court. His motion for extension of time is GRANTED. Because the plaintiff has

amended his complaint, his motion to compel discovery is premature and is hereby DENIED without prejudice subject to refiling at a later stage of the proceedings.

## ORDERS

(1) The plaintiff's motion to amend his complaint [Doc.#22] is GRANTED. The Court will accept the plaintiff's second amended complaint [Doc.#26].

(2) The plaintiff's Eighth Amendment claim for deliberate indifference to medical needs will proceed against Dr. Naqvi, Dr. Wu, and Nursing Supervisor Green in their individual capacities regarding their treatment or lack of treatment of the plaintiff's foot and back injuries. The Clerk is hereby directed to reinstate Dr. Wu and Nursing Supervisor Green as defendants to this action.

(3) **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Dr. Jonny Wu and Nursing Supervisor Heidi Green and mail a waiver of service request packet to those addresses. On the thirty-fifth (35) day after mailing, the Clerk shall report to the Court on the status of both requests. If Dr. Wu or Nursing Supervisor Green fail to return the waiver requests, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rules Civil Procedure 4(d).

(4) The Clerk shall mail a copy of this order to Defendant Naqvi, as to whom a waiver of service has been filed but who has not appeared, at the address provided in his waiver of service [Doc.#15]. Defendant Naqvi is on notice that if he does not respond to the operative complaint [Doc.#26] **within sixty (60) days of this order**, he may be defaulted. If he chooses to file an answer, he shall admit or deny the allegations and

respond to the Eighth Amendment claims. He may also include any and all additional defenses permitted by the Federal Rules.

(5) Defendants Wu and Green shall file a response to the second amended complaint, either an answer or motion to dismiss, **within sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to defendants Wu and Green. If they choose to file an answer, they shall admit or deny the allegations and respond to the Eighth Amendment claims. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(8) The plaintiff's motion for extension of time to submit discovery [Doc.#25] is **GRANTED**. The plaintiff's motion to compel discovery [Doc.#27] is **DENIED** without prejudice subject to refilling at a later stage of litigation.

SO ORDERED at Hartford, Connecticut this 10th day of August, 2017.

/s/
Michael P. Shea, U.S.D.J.